## KENNY v. CITY OF NEW YORK.
### No. 15589.

District Court, E. D. New York.
June 28, 1939.

Mahar & Mason, of New York City (William J. Mahar and Edward L. P. O'Connor, both of New York City, of counsel), for libelant.

William C. Chanler, Corp. Counsel, of New York City (George Seagrave Franklin and John T. Condon, both of New York City, of counsel), for respondent.

BYERS, District Judge.

In this cause, the libelant, as owner of the scow "Columbiad", seeks to recover damages from the respondent for failure to return the scow in as good condition as when delivered. The evidence yields the following findings of fact:

1. The libelant at all times material to the issues herein was the owner of the deck scow "Columbiad".

2. On or about July 5, 1938, the respondent became the bailee of said scow under a written contract consisting of an offer and acceptance, in which the respondent agreed to pay $600 "for the use of a deck scow (bare boat) for fireworks display beginning July 6, 1938 and ending August 31, 1938."

3. The said contract further provided that the quoted figure "includes the cost of towing the scow to the vicinity of Orchard Beach and return and also includes the furnishing of a layer of sand or soil on the deck. The scow will be equipped with necessary lines and anchors for mooring."

4. The said scow was delivered pursuant to the said written contract on July 5, 1938, and was moored substantially at a place selected by the respondent.

5. The scow there remained until August 30, 1938, when she was removed by the respondent to a new mooring distant about 1,000 feet from the place of the first mooring.

6. During the period from July 5, 1938, to August 30, 1938, the said scow was resting on rocks at low tide, on more than one occasion.

7. The object of the hiring of the scow was to use it as a platform from which fireworks displays could be conducted under the auspices of the respondent after nightfall, during the stated period.

8. The place of the second mooring was selected by the respondent, and the scow was there anchored by a tug master hired by the respondent to move the scow to its new location.

9. Between August 30, 1938, and September 2, 1938, the scow went adrift during an easterly storm.

### Conclusion of Law.

The respondent must be held liable for the damage sustained by the scow while it was bailee thereof.

The foregoing findings require but brief discussion; the only argument presented for the respondent in its brief is that the City did not charter the scow but merely hired what it calls a "floating platform", the responsibility for the maintenance of which rested at all times upon its owner.

The nature of the relation between the parties is not changed by referring to the "Columbiad" as a floating platform. It is true that such was the use that was made of it, and the parties so understood when they entered into their contract; but that does not disguise the fact that in effect the City chartered a scow under a bare boat charter and assumed the ordinary duties of a bailee in connection with that undertaking.

The fact that the libelant visited the scow on several occasions, while it was under hire to the City, does not change the relation of the parties. He secured permission from the officials having the vessel in their custody, in order to make those visits, and the further fact that he pumped her dry once or twice does not mean that he retained custody and control of the vessel.

The City posted signs on the scow, warning bathers away from it, and placed lanterns on board to act as danger signals at night, and of course the operators who set off the fireworks used the scow for the purpose of their employment. The City placed fire extinguishers on board, and generally treated the vessel as property within its custody and control.

The vessel did not cease to be such, because of the non-maritime uses to which she was put.

If the City chose to use a scow for the purposes of fireworks display, it did not thereby relieve itself of the duties pertaining to the proper care of a vessel even though she was not engaged in navigation. It is true that, when such a scow or barge is used for the storage of grain, the contract involved is non-maritime, but this case is thought to fall into a different category. This scow was not an inert thing, merely serving as a container of merchandise. She was afloat in the tideway, and was being constantly used, though unconventionally. While her moorings were shifted but once by the City, it would have been possible for the right to have been exercised frequently, as the officials in charge preferred.

Under all the evidence in the case, it is concluded, as has been stated, that the City failed in its duty as a bailee, and must be held responsible for the damages suffered by the scow while under charter to it.

Settle decree.